UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

KESTREL TECHNOLOGIES, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 12-15052 (JMP)

(Jointly Administered)

### SECOND INTERIM APPLICATION OF ENGLAND SECURITIES, LLC, AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS-IN-POSSESSION, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JUNE 1, 2013 TO OCTOBER 31, 2013

England Securities, LLC ("England"), investment banker and financial advisor to the above-captioned debtors ("Kestrel," the "Debtors," or the "Company"), hereby submits this Second Interim Application (the "Application") for the Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the period of June 1, 2013 through October 31, 2013 (the "Application Period"). In support of this Application, England respectfully represents as follows:

1.  This Application is made pursuant to (i) sections 328(a) and 330 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of Bankruptcy Procedure for the Southern District of New York

---

[1] The Debtors are the following entities: Kestrel Technologies, Inc., and Kestrel Solutions, LLC. The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

(the "Local Rules"); (iii) the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated November 25, 2009, and the United States Trustee Fee Guidelines (collectively, the "Fee Guidelines"); and (iv) this Court's Order, dated March 15, 2013, authorizing the Debtors to retain and employ England pursuant to section 327(a) and 328(a) of the Bankruptcy Code as investment banker and financial advisor to the Debtors in this Chapter 11 case [Docket No. 63] (the "Retention Order").

## INTRODUCTION

1. Kestrel was a software development company that focused on providing technology for the fixed income trading market. Although the Company had many customers in the early-2000's, the Company's last customer ceased using Kestrel's software by 2009. As a result of dramatically reduced revenue, the Company incurred significant liabilities (including material unpaid federal and state payroll taxes) and was not able to pay or retain its employees.

2. Among the liabilities incurred by the Debtors were material employer payroll withholding taxes owed for six quarters (quarters ending June 30, 2006 to December 31, 2007) to the Internal Revenue Service (the "IRS") of the United States Government. On March 20, 2008 and May 28, 2008, the IRS placed federal tax liens on the assets of Kestrel Technologies, Inc. for unpaid assessed balances aggregating approximately $1.0 million. On or about September 2008, Kestrel Technologies, Inc. entered into an Instalment Payment Agreement with the IRS. By mid-2009, after having made approximately seven scheduled monthly payments, Kestrel Technologies, Inc. and the IRS renegotiated the Instalment Agreement; in July 2010, Kestrel Technologies, Inc. defaulted on the revised payment plan. By June 30, 2012, Kestrel Technology, Inc.'s outstanding

federal tax balance, including penalties and interest, subject to the liens exceeded $1.2 million, and we understand that the IRS had classified Kestrel Technologies, Inc. to be a "status 53" uncollectible account.

3. The Debtors determined in the exercise of their business judgment, that, in light of the Company's extremely limited liquidity, lack of revenue, extensive liabilities (including, but not limited to its Federal tax obligations), and the attendant financial difficulties resulting therefrom, the Debtors required the assistance of experienced investment bankers in order to provide strategic financial advice as to restructuring alternatives, including selling the Company's intellectual property, to maximize the value available to its creditors.

4. Accordingly, on August 28, 2012, Kestrel retained England as investment banker to provide financial and strategic advice to the Debtors regarding a potential bankruptcy filing and the possible sale of the Debtors' assets. A copy of the August 28, 2012 Engagement Letter (the "Engagement Letter") is attached hereto and incorporated herein as *Exhibit A*.

5. On December 31, 2012 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court.

6. On or about January 16, 2013, England assisted the Debtors in negotiating and entering into (i) a $600,000 debtor-in-possession loan agreement with Technology Funding, LLC ("TFL"), and (ii) an Asset Purchase Agreement, also with TFL, whereby TFL agreed to be the "stalking horse" bidder to acquire substantially all of the Debtors' intellectual property assets for $1,500,000. The sale of substantially all of Kestrel's assets was subject to an auction process governed by section 363 of the Bankruptcy Code.

7. On January 17, 2013, the Debtors filed an Amended Motion for Interim and Final Motions relating to DIP Financing and an Amended Bid Procedures/Sale Motion with the Court.

8. The Bid Procedures/Sale Motion was approved by this Court on February 27, 2013. The Bid Procedures/Sale Order established a bid deadline of May 6, 2013 and an auction date of May 7, 2013.

9. Immediately following the Court's approval of the Bid Procedures/Sale Motion, England initiated an extensive marketing effort for the sale of the Debtors' assets. This marketing effort included preparation of marketing materials, contacting over 115 potential strategic and financial acquirors, and coordinating due diligence efforts, including technology demonstrations, with four potential acquirors.

10. No bids superior to the stalking horse bidder's offer were received by the Debtors prior to the bid deadline, consequently, no auction was held. A Sale Hearing approving the sale of the Debtors' assets to the stalking horse bidder, TFL, was held on May 9, 2013.

11. On or about June 24, 2013, the Debtors consummated the sale of substantially all of its assets to the assignee of TFL (the "Purchaser"). Sale proceeds (net of payment of the DIP loan principal and interest outstanding, and counsel fees for the DIP lender) were transmitted by the Purchaser to an escrow account held by the Debtors' counsel, Hodgson Russ LLP.

## RETENTION OF ENGLAND SECURITIES, LLC

12. On January 15, 2013, the Debtors filed an application with this Court [Docket No. 21] (the "Retention Application") requesting authorization to employ and retain England as investment banker and financial advisor to the Debtors and Debtors-in-Possession pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. As noted in the Retention Application, England performed services for Kestrel on a pre-petition basis beginning on August 28, 2012.

13. On March 15, 2013, this Court entered the Retention Order authorizing the Debtors to retain and employ England as investment banker and financial advisor to the Debtors in the Chapter 11 case, *nunc pro tunc* to December 31, 2012, pursuant to the terms of the Engagement Letter. A copy of the Retention Order is attached hereto and incorporated herein as ***Exhibit B***.

14. Pursuant to the Retention Order, England was authorized to perform certain services for the Debtors as described in the Engagement Letter, to the extent England deemed necessary, appropriate and feasible and as requested by the Debtors, including:

(a) Provide financial advice to the Debtors in structuring, evaluating and effecting a sale of the Debtors' assets;

(b) Advise the Debtors on its preparation of information materials for a potential sale transaction;

(c) Assist the Debtors in contacting potential acquirors, and meet with and provide such potential acquirors with information materials about the Debtors' assets and business;

(d) Assist in arranging and executing a sale of the Debtors' assets, including assisting in the due diligence process and negotiating the terms of any proposed sale;

 (e) Assist the Debtors' management and their legal team in gathering and determining the relevant financial information needed for the Bankruptcy Schedules, Statement of Financial Affairs and First Day Motions; and

 (f) Provide testimony in Bankruptcy Court on matters to be mutually agreed in good faith by the Debtors and England.

## TERMS AND CONDITION OF COMPENSATION OF ENGLAND

15. As described more fully in the Engagement Letter and pursuant to the Retention Order, England is entitled to receive, as compensation for its services, certain fees, including Monthly Fees (as defined below) and a Sale Transaction Fee (as defined below) upon the closing of the sale of the Debtors' assets and/or a restructuring of the Debtors' business. The applicable compensation and expense reimbursement elements for this Application Period are:

 (a) <u>Monthly Fees</u>: In addition to the other fees provided for in the Engagement Letter, upon each monthly anniversary of the Effective Date of the Engagement Letter, the Company shall pay England in advance, without notice or invoice, a non-refundable cash fee of $15,000.00 ("Monthly Fee"). Each Monthly Fee shall be earned upon England's receipt thereof in consideration of England accepting this engagement and performing services as described herein;

 (b) <u>Sale Transaction Fee</u>: Upon the closing of a Sale Transaction, England shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of each Sale Transaction, a cash fee ("Sale Transaction Fee"). The Sale Transaction Fee for all Sale Transactions (in aggregate) will be equal to (i) $120,000.00 <u>plus</u> (ii) ten percent (10.0%) of the aggregate consideration paid from all Sale Transactions in excess of $1,500,000.00; and,

 (c) <u>Expenses</u>: In addition to all of the other fees and expense described in the Engagement Letter, and regardless of whether any transaction is consummated, the Debtor shall, upon England's request, reimburse England for its reasonable out-of-pocket expenses incurred from time-to-time in connection with its services under the Engagement Letter.

16. As noted by the Debtor in the Retention Application, England's fee structure under the Engagement Letter appropriately reflected the nature and scope of the services to be provided by England and the fee structures typically utilized by England and other investment banks that do not bill their clients on an hourly basis.

## SUMMARY OF SERVICES RENDERED BY ENGLAND

17. Kestrel selected England as its investment banker and financial advisor because England has extensive expertise in providing investment banking services to companies in the financial technology sector, as well as experience working with companies facing financial challenges, both in and out of Chapter 11 bankruptcy proceedings.

18. During the Application Period, the following professionals performed substantial services to the Debtors in this chapter 11 case: Craig W. England, Managing Director; and Jonathan H. Jacobs, Analyst.

19. England provided a wide variety of investment banking, financial and restructuring advisory services for the Debtors during the Application Period, including but not limited to the following:

    (a) Facilitated due diligence and closing process between Debtors, Debtors' legal counsel, the Purchaser, and the Purchaser's legal counsel;

    (b) Coordinated delivery of purchased assets and assisted in executing the closing of the sale of the Debtors' assets;

    (c) Assisted Debtors in preparation of revised cash flow budgets;

    (d) Participated in telephonic meetings of the Debtor's Board of Directors;

(e) Participated in telephonic meetings with representatives of the IRS;

(f) Correspondence, meetings and discussions with other parties-in-interest;

(g) Assisted Debtor and Debtors' legal counsel in rejecting certain executory contracts;

(h) Assisted Debtors in preparation of Monthly Operating Reports;

(i) Attended interim fee hearing; and

(j) Other case administration.

20. Pursuant to the Retention Order, "England shall include in its fee applications, among other things, time records setting forth a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the debtors in on-half hour increments, but England shall not be required to provide or conform to any schedule of hourly rates."

21. During the Application Period, England's professionals dedicated approximately 118 hours of effort in performing services on behalf of the Debtors. A detailed breakdown of the specific task performed by the professional and the number of hours spent by each professional are set forth in *Exhibit C*.

## RELIEF REQUESTED

22. By this Application, England requests approval of certain fees outlined in the Retention order, including (i) $30,000.00 for two (2) monthly fees (the "Monthly Fees") covering June and July 2013 of the Application Period, (ii) $22,500.00 for three (3) Monthly Fees voluntarily discounted by 50% (i.e., $7,500.00 per month) covering August, September and October 2013 of the Application Period, and (iii) $120,000.00 for a sale transaction fee (the "Sale Transaction Fee")

due upon the consummation of a sale of substantially all of the Debtors' assets. England requests that the Court order no holdback of fees from this Application Period and, additionally requests approval of payment of the holdback fees from the first interim fee application period. At this time, England respectfully requests the Court's approval for full payment in the amount of the requested $172,500.00, and for the payment of prior holdback fees in the amount $15,000.00, subject to further order of the Court. A detailed summary of the total fees sought is presented below:

| Applicable Fee | Date Earned | Fee Amount |
| --- | --- | --- |
| Monthly Fee | June 28, 2013 | $15,000.00 |
| Monthly Fee | July 28, 2013 | 15,000.00 |
| Monthly Fee (50% discount) | August 28, 2013 | 7,500.00 |
| Monthly Fee (50% discount) | September 28, 2013 | 7,500.00 |
| Monthly Fee (50% discount) | October 28, 2013 | 7,500.00 |
| **Total Monthly Fees Requested** | | **52,500.00** |
| Sale Transaction Fee | June 24, 2013 | 120,000.00 |
| **Total Fees Requested** | | **$172,500.00** |

23. England also seeks $497.72 for reimbursement of actual, reasonable and necessary expenses incurred by it during the Application Period. A detailed summary of the reimbursable expenses is found in *Exhibit D*.

### AUTHORITY FOR REQUESTED RELIEF

24. By its Retention Order, the Court specifically provided that (a) "[in] accordance with Sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Local Rules, the Debtors shall be, and hereby are, authorized to employ and retain England as financial advisor and investment banker in accordance with the terms and conditions set forth in this Application and the Engagement Letter as modified herein", (b) "[the] Engagement Letter, including without limitation, the Fees, Expense and

Indemnification sections thereof, is approved in all respects except as set forth herein", and (c) "England's compensation pursuant to the Engagement Letter shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy code; provided, however, that the United States Trustee retains all rights to object to England's interim and final fee applications (including expense reimbursement) on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code."

25. The professional services of England and the related expenses that are the subject of this Application were rendered and incurred in connection with this Chapter 11 case, and in the discharge of England's professional responsibilities as investment banker and financial advisor for the Debtors in this Chapter 11 case. England's services have been substantial, necessary, and beneficial to the Debtor and its estate. England believes that the fees and expenses requested by this Application are reasonable, and are equivalent to, or less than, the compensation that would be charged by comparable investment banking firms for similar investment banking services in both bankruptcy cases and non-bankruptcy, and necessary given the variety and complexity of the issues involved in these cases and the need to act or respond on an expedited basis to those issues. England respectfully submits that (i) its professional services were necessary and appropriate and substantially benefited the Debtors' estate; and (ii) the compensation requested in this Application is in accordance with the terms of the Engagement Letter as approved by the Retention Order pursuant to Section 328(a) of the Bankruptcy Code.

26. WHEREFORE, England respectfully requests the Court enter an Order (i) approving its compensation of $172,500.00 (consisting five (5) Monthly Fees during the

Application Period (two (2) of which at $15,000.00 per month plus three (3) voluntarily discounted by 50% to $7,500.00 per month) plus $120,000.00 for the Sale Transaction Fee) and reimbursement of actual, reasonable and necessary expenses in the amount of $497.72 for Application Period; (ii) approving payment of prior holdback fees from the first interim fee application period in the amount of $15,000.00; and (iii) authorizing the Debtors to pay to England all amounts requested pursuant to this Application.

Respectfully submitted,

Dated: November 26, 2013

**ENGLAND SECURITIES, LLC**

By: _____
Craig W. England
Managing Director
888 17th Street, NW
Suite 304
Washington, DC 20006
(202) 386-6500